

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 4, 2019

**BY ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *Troy Samuels*, S1 19 Cr. 173 (PAE)

Dear Judge Engelmayer:

    The defendant in this case, Troy Samuels, is scheduled to be sentenced by Your Honor on October 15, 2019 at 10:30 a.m. The Government respectfully submits this letter in connection with the defendant's sentencing and in response to the defendant's sentencing memorandum dated September 25, 2019. The defendant stands convicted of being a felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1). As set forth in the plea agreement (the "Plea Agreement"), the parties have stipulated to a United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 84 to 105 months' imprisonment (the "Stipulated Guidelines Range"). The Probation Department calculates the same Guidelines range in the final Presentence Investigation Report ("PSR"), and recommends a sentence of 84 months' imprisonment. For the reasons set forth below, the Government believes a sentence of imprisonment within the Stipulated Guidelines Range would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

    **A.  Offense Conduct**

    In the early morning hours of February 10, 2019, Troy Samuels walked out of an after-hours bar (the "Bar") in the Bronx, New York, near 598 East 167th Street. Samuels can be seen on surveillance video pacing up and down the sidewalk outside the Bar. At one point, Samuels can be seen in surveillance video, on the sidewalk outside the Bar, holding a small caliber pistol (*i.e.*, the "Firearm") in his right hand. PSR ¶ 15. Approximately 50 minutes later, surveillance video then shows an individual ("Individual-1") walk out of the Bar and brandish a firearm. *Id.* In the surveillance video, Individual-1 appears to be yelling in the direction of three individuals down the street. *Id.* The video then shows Individual-1 react as if being shot at before Individual-1 then fires multiple rounds in return. A victim (the "Victim"), who was standing behind Individual-1, was shot in the leg during the exchange of gunfire. Law enforcement responded to the scene and collected six .25 caliber shell casings and three .380 caliber shell casings. Law

enforcement never learned the motive for the shooting on February 10, 2019 or any additional details as to why the shooting occurred.

The second shooting occurred on the evening of February 14, 2019. In surveillance video from that night, Samuels can be seen inside of a bodega (the "Bodega") near 159th Street and Amsterdam Avenue in Manhattan at approximately 10:00 PM selling narcotics to individual customers. Specifically, Samuels can be seen receiving cash and handing out small bags containing a white substance to six individuals. Shortly after making his last hand-to-hand sale, Samuels exits the Bodega and can be seen on surveillance video being chased by another individual, later identified as Phillip Robinson ("Robinson"). Samuels, as he is being chased by Robinson, falls to the ground and a small caliber pistol (*i.e.*, the Firearm) can be seen coming out of Samuels' hand, skidding across the sidewalk, and landing near the wheel well of a white van.

After falling, Samuels gets up and Robinson is standing right beside Samuels with a firearm brandished (the ".45 Caliber Firearm"). In the surveillance video, Robinson appears to be yelling at Samuels, and Samuels subsequently hands Robinson what appears to be a plastic bag and a large amount of cash. After robbing Samuels, Robinson turned his back to Samuels and walked away. Samuels can then be seen on surveillance video retrieving the Firearm and following Robinson. Seconds later, as Robinson crossed the street and placed the .45 Caliber Firearm in Robinson's waistband, the .45 Caliber Firearm accidentally went off. Robinson shot himself in the groin. After Robinson crossed the street (after shooting himself in the groin), Robinson and Samuels exchanged gunfire.[1] One .25 caliber shell casing and one .45 caliber shell casing were recovered from the scene of the February 14, 2019 shooting. NYPD Detective Jonathon Fox, a ballistics expert, determined that the .25 caliber shell casing recovered from the scene of the February 14, 2019 shooting and the .25 caliber shell casings recovered from the scene of the February 10, 2019 shooting were all fired from the Firearm.[2]

When Samuels was arrested on February 27, 2019 – pursuant to an arrest warrant for the charges in the Criminal Complaint – the arresting officers performed a search incident to arrest and recovered approximately 29 bags of crack cocaine. The 29 bags were in small zip lock bags – packaging consistent with re-sale – and were within in larger bag marked "King Sting 6."

---

[1] The Government had initially believed that it was Samuels who shot Robinson in the groin. However, at Robinson's plea allocution, Robinson's counsel said that Robinson actually shot himself. Robinson pled guilty to brandishing a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i)(ii). Robinson is scheduled to be sentenced on October 7, 2019, and the Government expects that Robinson will be sentenced to 84 months' imprisonment (the mandatory minimum). *See United States v. Phillip Robinson*, 19 Cr. 191 (RMB).

[2] A video compilation of surveillance video from the shooting on February 10, 2019 and February 14, 2019 is attached hereto as Exhibit A.

### B. Procedural History

On February 26, 2019, Troy Samuels was charged by Criminal Complaint with two counts of being a felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1), for the shooting that occurred on February 10, 2019 in the Bronx (Count One), and the shooting that occurred on February 14, 2019 in Manhattan (Count Two). ECF No. 1. Samuels was arrested by the New York City Police Department ("NYPD") the next day, February 27, 2019, in the Bronx. EFC No. 4. When law enforcement arrested Samuels, they performed a search incident to arrest and recovered from his person approximately 29 small zip lock bags containing a white substance, which bags were within a larger plastic bag marked "King Sting 6." The white substance was subsequently tested by the NYPD and determined to contain cocaine base, or crack cocaine.

On March 11, 2019, Samuels was indicted and charged in Counts One and Two with being a felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1), for the February 10, 2019 shooting and the February 14, 2019 shooting. ECF No. 5. Samuels was also charged with possessing with intent to distribute crack cocaine on or about February 14, 2019 in Manhattan, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) (Count Three), and discharging a firearm in furtherance of a narcotics trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i)(ii)(iii) (Count Four). *Id.* On April 29, 2019, a different grand jury returned a Superseding Indictment, charging Samuels in the same four counts, and in a new Count Five with possessing with intent to distribute crack cocaine on or about February 27, 2019 in the Bronx (for the approximately 29 bags of crack cocaine seized from Samuels upon his arrest), in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C). ECF No. 22.

The defendant pleaded guilty to Count Two of the Superseding Indictment on June 28, 2019 pursuant to the Plea Agreement. On September 18, 2019, the Probation Office issued the final draft of the PSR. Consistent with the Plea Agreement, the PSR calculates that the defendant is in Criminal History Category IV and that the offense level is 25, resulting in a Sentencing Guidelines range of 84 to 105 months' imprisonment. The Probation Department recommended a sentence of 84 months' imprisonment. PSR at pg. 22. On September 25, 2019, the defense submitted a sentencing letter ("Deft. Sub."), seeking a below-Guidelines sentence of six years' imprisonment. ECF No. 60.

### C. Discussion

#### 1. Applicable Law

The Guidelines still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which

"should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)–(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### 2. A Sentence of Imprisonment Within the Stipulated Guidelines Range is Appropriate in This Case

A significant sentence of incarceration is necessary here to reflect the seriousness of the offense conduct, to promote respect for the law, to provide just punishment, to afford adequate deterrence to this defendant and other similarly situated individuals, and to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2)(A)–(C). All of these considerations weigh heavily in favor of a sentence within the Guidelines range.

*First*, a sentence within the Guidelines range is necessary to reflect the seriousness of the defendant's conduct, to promote respect for the law, and to provide just punishment.

On February 14, 2019, the defendant was selling crack cocaine inside a bodega to multiple people. After being robbed, the defendant chased after his assailant and discharged a gun on a busy street in Manhattan. Fortunately, no one—including the intended target or innocent bystanders—were killed. The defendant's heedless actions posed a great risk to many people, and that impact lasts in the minds of all the people who were near the scene of the shooting. Incapacitating violent offenders like the defendant who are willing to commit acts of gun violence is a concern of paramount importance. The circumstances of the incident make clear that the defendant is a violent and dangerous man who lacks self-control. Just four days prior, on February 10, 2019, the defendant can be seen outside of an illegal nightclub with a small caliber firearm in his hand. A shootout on a public sidewalk then occurred less than an hour later where a victim is shot in the leg.

*Second*, a Guidelines sentence is necessary to afford adequate deterrence to the defendant and others similarly situated.

With respect to specific deterrence, it is clear that the defendant's previous prison sentences, both for drug trafficking crimes and one from this District, did not deter him from committing further crimes. Indeed, the defendant committed the instant offense while he was on parole for his last felony drug conviction. And as can be seen in Exhibit A, and from the crack cocaine that the defendant had on his person when he was arrested on February 27, 2019, the defendant went right back to dealing dangerous drugs. Moreover, as evidenced by the events on February 14, 2019, the defendant is a violent drug dealer who is not afraid to shoot someone if necessary to protect his drug business. A significant sentence of incarceration is thus necessary to deter the defendant from further criminal acts. As to general deterrence, a sentence within the Guidelines range would send a message to other felons who would consider possessing firearms or ammunition—or even worse, shooting firearms—that such conduct carries very serious consequences.

*Third*, a sentence within the Guidelines range is necessary to protect the public from further crimes by the defendant. The defendant's conduct in this case indicates that he is violent, dangerous, quick to escalate, and has little regard for the safety or lives of others. Based on his two previous convictions for drug trafficking, there is nothing to suggest that the defendant is done with being a drug dealer.

### D. Conclusion

For the reasons set forth above, the Government respectfully submits that a significant sentence of imprisonment within the Stipulated Guidelines Range would be fair and appropriate in this case.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: _s/_
Jacob Warren
Assistant United States Attorneys
(212) 637-2264

cc: Jessica Ortiz, Esq. (by ECF)